[No. B122233. Second Dist., Div. Four. Dec. 16, 1998.]

In re ROBERT L. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Appellant, v.
ROBERT L. et al., Defendants and Respondents.

COUNSEL

Lloyd Pellman, County Counsel, Lois Timnick and Judith A. German for Plaintiff and Appellant.

Stephanie M. Davis, under appointment by the Court of Appeal, for Defendants and Respondents.

OPINION

HASTINGS, J.—This is an appeal by Los Angeles County Department of Children and Family Services (DCFS) from an order extending the juvenile

court jurisdiction of Robert and Michelle L. (collectively referenced as respondents and individually by their first names) beyond age 18. We conclude that the juvenile court abused its discretion. We reverse and remand with directions to enter a new order terminating jurisdiction over Robert and Michelle.

## STATEMENT OF FACTS

Robert was born August 17, 1977, and his sister, Michelle, was born December 17, 1979. In 1985, respondents, along with two siblings, Daniel and Ralph, were the subjects of dependency proceedings initiated by DCFS.[1] All the children were removed from the custody of their parents and placed with their maternal grandparents in a spacious four-bedroom home. The social worker helped the grandparents in finding sources of financial aid and the grandmother quit her job so that she would be home when the children returned from school. The grandparents elected not to seek legal guardianship so that they would remain eligible to receive $700 per month in foster care benefits, and on May 5, 1987, the court ordered that respondents be placed in long-term foster care with the grandparents.

Respondents adjusted well to the care of their grandparents. Each attended advanced placement classes in high school, and they set their sights toward attending college. Robert was active in sports and Michelle was active in Job's Daughters, a religious organization. Each also obtained part-time jobs.

In 1995, Robert was accepted to all universities to which he had applied. He chose to attend California State University, Northridge, commencing in 1996. During the summer of 1995 he worked at Magic Mountain and was able to purchase a classic Mustang for $3,000. He spent an additional $2,000 restoring this vehicle. He later sold it after receiving two traffic tickets. With a loan of $1,200 from his grandparents, he bought a new automobile. He paid $2,500 from his savings for his automobile insurance. He repaid his grandparents by working at Price Club. By July 28, 1997, Robert had completed two years of college with a B+ average and was about to enter his junior year. At all times he continued to reside with his grandparents.

Michelle was active in Job's Daughters and Students Against Drunk Driving during her high school years. She continued to work part-time as a babysitter, and during the summers she worked with her aunt in a medical office. She set her sights on going to California State University, Northridge. She requested and obtained a referral to the DCFS Independent Living

---

[1]The court previously terminated its jurisdiction of Daniel when he turned 18 years of age. Ralph died in a swimming accident before his 18th birthday.

Program on December 24, 1996. She also continued to reside with her grandparents.

For the review hearing of July 29, 1997, the social worker recommended termination of jurisdiction over Robert: "In view of the fact that Robert will be 20 years old next month, has graduated from high school, successfully completed two years at University, resides with his maternal grandparents, is a high functioning young adult and has fulfilled all the requirements for emancipation, it is presently recommended that the jurisdiction of the court for minor Robert be terminated." She advised that jurisdiction should be retained over Michelle, who had graduated from high school and was planning on attending Mission Community College in the fall while residing with her grandparents. Robert opposed termination of jurisdiction and told the social worker that he would like to continue within dependency "to help defray educational and living expenses." The maternal grandfather told the social worker that he and his wife had each given up employment to assist respondents and if financial aid were stopped it would create a financial burden and make it more difficult for him and his wife to help respondents. The court retained jurisdiction of both Robert and Michelle.

At the next review hearing, January 27, 1998, the social worker recommended that jurisdiction of both respondents be terminated: "This recommendation is being made in view of the fact that both young adults have graduated from high school, are both doing very well academically in their respective college curriculums, and are residing in the home of their maternal grandparents who provide a stable place of abode." Respondents opposed termination of jurisdiction because of the financial burden it would place on their grandparents. The court retained jurisdiction and scheduled another hearing for March 12, 1998.

On March 12, 1998, DCFS filed a motion to terminate jurisdiction of respondents. Among the arguments raised was that the purpose of dependency was not promoted by retaining jurisdiction over adults to provide for a college education. Respondents and their grandparents attended the hearing and again objected to termination of jurisdiction. Robert opined that if the grandparents did not receive foster care funding he would not be able to afford to graduate from college and society would benefit more if he paid higher taxes from increased earnings available to college graduates. Michelle advised the court that the only reason her brother Daniel had not attended college is that the court had terminated jurisdiction over him too early and she hoped that the foster care system could "be of more help to me." The grandfather was concerned that neither respondent would have medical coverage upon emancipation and asked the court to consider the social benefits to society by making sure respondents were properly educated.

The court denied the motion and retained jurisdiction over respondents. The findings in the minute order of March 12, 1998, are as follows: "The court finds by a preponderance of the evidence: [¶] That continued jurisdiction is necessary because *conditions exist which justify jurisdiction under WIC 300, WIC 364(c).* [¶] Return of the Minor(s) to the physical custody of the parent(s)/guardian(s) would create a substantial risk of detriment to the physical/emotional well-being of the minor. WIC 366.2(e). [¶] Court finds that Minor(s) cannot be returned to the physical custody of the parent(s)/guardian(s), and there exists no substantial probability the Minor(s) will be returned within six months. [¶] Court finds that it is not likely that the Minor(s) can or will be adopted and orders DCFS to initiate or facilitate: Long-term Foster Care." (Italics added.)

The court issued an oral statement from the bench, which we quote later in this opinion and which is at odds with the minute order. It is from this minute order that DCFS appeals.

## DISCUSSION

■ Juvenile court jurisdiction of a minor is originally obtained pursuant to the provisions of Welfare and Institutions Code section 300.[2] While the juvenile court is precluded from initiating jurisdiction over a person who has reached the age of 18 (*In re Gloria J.* (1987) 188 Cal.App.3d 835, 838 [233 Cal.Rptr. 690]), after it has properly obtained jurisdiction, it ". . . may retain jurisdiction over any person who is found to be a dependent child of the juvenile court until the ward or dependent child attains the age of 21 years." (§ 303; *In re Ruth M.* (1991) 229 Cal.App.3d 475, 480, fn. 4 [280 Cal.Rptr. 74].)

Initially, we note that the minute order of March 12, 1998, recites section 364, subdivision (c), as one of the statutes the court relied upon to retain jurisdiction over respondents. That section deals with retention of jurisdiction when the child is placed with a parent or a legal guardian, not where long term foster care is selected. Absent placement with a parent, adoption, or legal guardianship, the juvenile court must place the minor in long-term foster care, retain jurisdiction over the minor, and conduct six-month review hearings. (§ 366.3, subds. (d) and (f); *In re Rosalinda C.* (1993) 16 Cal.App.4th 273, 279 [20 Cal.Rptr.2d 58].)

■ In determining whether to terminate jurisdiction over a child in long-term foster care, the issue to be addressed is the best interest of the child. The court does not review the original basis for exercising jurisdiction

[2]All further citations will be to Welfare and Institutions Code unless otherwise noted.

under section 300, the other statute cited in the minute order. (*In re France-cisco* (1971) 16 Cal.App.3d 310, 314 [94 Cal.Rptr. 186].) The burden of proof on the issue of termination rests with the party seeking to terminate jurisdiction and the decision whether to terminate jurisdiction falls within the sound discretion of the juvenile court. We reverse only where the hearing officer has "exceeded the bounds of reason." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

We are dealing here with jurisdiction retained pursuant to the provisions of section 303, which does not delineate what factors should be considered in extending jurisdiction beyond majority. We have found no reported case dealing with the subject, and the parties have not cited us to any. However, we are guided by section 300.2, enacted in 1996, which discusses the purpose behind the dependency laws.

"Notwithstanding any other provision of law, the purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are *currently* being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm.* This safety, protection, and physical and emotional well-being may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children. The focus shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child. The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment." (§ 300.2, italics added.)

■ This section declares what case law had previously determined: that exercise of jurisdiction must be based upon existing and reasonably foresee-able future harm to the welfare of the child. (*In re Melissa H.* (1974) 38 Cal.App.3d 173, 175 [113 Cal.Rptr. 139].) Similar factors should come into play in determining whether jurisdiction should extend beyond the age of majority.

The record in this case reflects that each respondent was thriving within a stable, safe, and nurturing environment created by the foster parents, their biological grandparents. No evidence suggests that either respondent is currently being physically, sexually, or emotionally abused, neglected, or exploited. Nor is there any evidence suggesting that such harm may occur in

the future. In its ruling from the bench, the court made no reference to these concerns. Instead, it focused on the issue of education:

"The purpose of the Welfare and Institutions Code with regard to dependent children is to provide protective services to the fullest extent necessary deemed by the court to ensure the physical, mental and moral welfare of children, taking into consideration that they shall be provided services such that they are not threatened by their present environment nor their present circumstances.

"Furthermore, this court, in order to carry out its mandated responsibilities, may make any and all reasonable orders for the care, custody, supervision and nu[r]turance of minors.

"Neither Robert nor Michelle are legally minors. They have both passed their 18th birthday. They have both graduated from high school. They are each college students, doing well. Robert will soon graduate. Michelle is in her beginning year of college.

"Is that correct, Michelle?

"THE MINOR [*sic*] MICHELLE: Yes.

"THE COURT: Without addressing the issue of tuition and taking into consideration all of the documents that I said I have read, including the letters written by these two young people, I find it is in their best interest to maintain jurisdiction.

"They do not have a parent to assist them with expenses of college education. The court and the Department has been their parent, although it is their grandparents who have actually ensured that the children's basic needs have been met but all under the supervision of the court and the assistance of the Department.

"If the court were to terminate jurisdiction, both of these students would substantially cut down the number of units that they are able to now study so that they could work to provide for their basic needs, including food, clothing and shelter, in addition to their educational expenses.

"If the court were to maintain jurisdiction, their caretakers, the grandparents, would receive funding which would at least pay for the basic needs, food, clothing and shelter. Given the marginal financial status of the caregivers and the full-time status of Robert and Michelle as students, for them to

have additional funding to provide for their shelter and their food and, I suspect, given the maturity of these two young people, that little, if any, money is spent on clothing other than the very basics. The money is necessary for shelter and food.

"There is no evidence that either of these young people or their caretakers are asking that the court order that the Department pay for tuition and books. Perhaps some of the money provided for their shelter and their food does go for their books and their tuition, but that would be due to the—probably, the very structured budgeting that the family must do and does do.

"Robert makes an extremely reasonable argument to the court. If we want to weigh and balance the costs; that if the court were to terminate the case now, it would take him twice as long to complete his education and, I believe—

"Robert, you now have just two more semesters; is that correct?

"THE MINOR [sic] ROBERT: Yes, it is.

"THE COURT: If the court terminated, it would take him twice as long to complete, and that's probably his reasonable estimate. It may even take him longer because he would be forced to take so fewer units such that he could work.

"For all of us who have been educated through a college or university system, we are all aware of the difficulties of working and going to school. It can be done. It's not easy. Once a person drops out of school to save money to return to school, or drops substantially lower in units, it's always very difficult to complete one's education.

"It is in society's best interest, as well as Robert's and Michelle's, that they have every helping hand to complete their education. Robert argues that once he completes his education, rather than being a responsibility to society's taxpayers, he then will be a taxpayer himself. In the long line, he likely will pay an astronomically larger amount in taxes as a college graduate sooner than if he did not graduate from college.

"The Department and the court have a—have assumed the responsibility of these two young people. The court and the Department has stood in the shoes of their parents, and it's not in these young people's best interest to be cut loose until they have additional stability and permanence in their life.

"The focus of the legislator [sic] through legislation is in fact permanence and stability, and with the additional helping hand providing for basic needs

through the foster care payments, Michelle and Robert will be in a much better position to realize permanence and stability at an earlier stage of their life, [than] if they did not have this special assistance with permanence and stability."

The foregoing demonstrates that the sole basis for extension of jurisdiction was to afford *special assistance* to Michelle and Robert to allow them to complete their college education. We are aware of no legislative mandate that the dependency system is to be utilized to subsidize higher education, and none is cited to us by respondents. Absent any evidence of current or future threatened harm to Michelle and Robert, the juvenile court abused its discretion in extending jurisdiction over Michelle and Robert.

## DISPOSITION

The order extending jurisdiction over Michelle and Robert is reversed. The matter is remanded with directions that the juvenile court terminate jurisdiction over Michelle and Robert.

Vogel (C. S.), P. J., and Epstein, J., concurred.