[No. B196277. Second Dist., Div. One. Sept. 20, 2007.]

In re D.R., a Person Coming Under the Juvenile Court Law.
LLOYD L., Plaintiff and Appellant, v.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Defendant and Respondent;
D.R., Appellant.

**COUNSEL**

Konrad S. Lee, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Roni Keller, under appointment by the Court of Appeal, for Appellant.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and O. Raquel Ramirez, Deputy County Counsel, for Defendant and Respondent.

Oᴘɪɴɪᴏɴ

**MALLANO, Acting P. J.**—D.R. (born in Nov. 1988) was declared a dependent of the juvenile court in 2001 and jurisdiction was terminated in 2003 upon the selection of legal guardianship as D.R.'s permanent plan and the appointment of Lloyd L. as D.R.'s legal guardian. Five days before D.R.'s 18th birthday, Lloyd filed a petition for modification under Welfare and Institutions Code section 388,[1] seeking to reinstate juvenile court jurisdiction over D.R., who suffered from developmental, behavioral, and medical problems. On November 7, 2006, the day D.R. attained the age of 18, the juvenile court summarily denied without a hearing Lloyd's section 388 petition on the ground that jurisdiction could not be reinstated because D.R. was 18 years old.

Both Lloyd and D.R. appealed from the order summarily denying the petition. We agree with their contention that the juvenile court erred in concluding that, because D.R. had attained the age of 18, jurisdiction could not be reinstated. We reject the assertions of the Los Angeles County Department of Children and Family Services (DCFS) that the appeals should be dismissed as moot or on the grounds of lack of standing or waiver. Accordingly, the order will be reversed and the matter remanded to the juvenile court to address the petition on its merits.

## BACKGROUND

In 2001, when D.R. was 12 and his brother was 10, they were detained and became dependents of the juvenile court because of their mother's marijuana use and the unsanitary living conditions in their home. The whereabouts of D.R.'s father were unknown throughout these proceedings. In August 2001, D.R. and his brother were placed in the foster home of Lloyd, an unrelated caretaker. Reunification services were terminated in April 2003, and in October 2003, Lloyd was appointed D.R.'s legal guardian and juvenile court jurisdiction was terminated.

From the time D.R. was detained until jurisdiction was terminated in October 2003, D.R. exhibited academic and behavioral problems, including bedwetting and violent and combative behavior. In April 2002, when D.R. was in the seventh grade, he was failing most of his classes. He was identified as "learning disabled" and placed in special education classes. From March 2002 until July 2003, D.R. attended individual therapy once a week.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

In January 2002, D.R. was diagnosed with posttraumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), and depression. He began taking medication for symptoms of irritability, sadness, aggression, and impulsivity, but in May 2002, his doctor took him off the medication because he was experiencing the side effect of fatigue.

Although D.R. was scheduled to attend summer school in July 2002, the program was cancelled due to lack of funds. In March 2003, the juvenile court ordered DCFS to assist Lloyd in providing tutoring for D.R. in history, but there was a six-month wait for tutors. By July 2003, DCFS provided Lloyd with referrals for tutors, but it is unclear whether D.R. received any tutoring before jurisdiction was terminated in October 2003.

The last quarterly report of the foster family agency before October 2003 stated that D.R. continued to be "slowly improving academically," and that he was enrolled in summer school because he had failed his eighth grade social studies and science classes.

On November 2, 2006, about a week before D.R.'s 18th birthday, Lloyd, in propria persona, filed a section 388 petition seeking to modify or set aside the October 15, 2003 order of legal guardianship and to reinstate juvenile court jurisdiction to continue support for D.R. The petition alleged that D.R. suffered from "severe mental disorders [of] P.T.S.D. and A.D.H.D.," that he "is a special education student" and "will need more time and support to graduate high school," and that he needed "time for prescribed medication to be properly adjusted" and "is being tested for possible heart problem." Attached to the petition was an October 16, 2006 report showing that D.R. was diagnosed with a heart murmur. An October 27, 2006 treatment progress summary from D.R.'s therapist, Cheryl Grove, noted that D.R. had "an emotional and developmental maturity level 3 to 5 years younger than his chronological age. . . . He also demonstrates impairments in daily functioning, requiring direction in routine daily activities including daily hygiene, washing clothes, and organizing schoolwork. His emotional immaturity and anxiety present obstacles to him making progress towards establishing and maintaining independent functioning. He has demonstrated anxiety regarding learning how to drive, and has not demonstrated the capacity to handle any financial responsibilities. [¶] . . . It is estimated that [D.R.] will require long-term mental health services."

In August 2006, D.R. began taking "Adderall . . . to address ADHD symptoms (inattentiveness, short attention span) that are impairing his school functioning." Grove also noted that D.R.'s psychiatrist was concerned about D.R.'s symptoms of depression and anxiety and planned to prescribe an antidepressant at his next appointment on October 30, 2006. Grove concluded as follows: "Due to his emotional and developmental impairments, [D.R.] is not ready to take on adult responsibilities. Although [D.R.] will soon turn 18, his current symptoms and developmental functioning cause him significant impairment such that it is doubtful that he would be able to provide for himself or complete high school without the continued support provided by [DCFS] and his legal guardian, Lloyd [L.]"

Also attached to Lloyd's petition was a report on D.R. prepared by a school psychologist in April 2005, when D.R. was in 10th grade. The psychologist stated that D.R. had passed all of his classes in the first semester of 10th grade, but that he appeared to have difficulty expressing himself and engaged in "stuttering-like behavior." Noting that Lloyd had not given consent for an assessment, the psychologist recommended that he "reconsider providing consent for individual standardized testing to gather additional information regarding cognitive ability, processing skills, academic skills, and social-emotional functioning." It was also recommended that D.R.'s individualized educational plan team refer D.R. to a speech and language pathologist to determine whether D.R. has "expressive language difficulties."

On November 7, 2006, the juvenile court denied the petition, stating that "[u]nfortunately, in this case filed by the legal guardian, the court is going to make the following findings: First of all, the child is now 18 years old. The court cannot reinstate jurisdiction once the child is 18 years or older. [¶] The legal guardianship is terminated when the child turns 18; therefore, I am going to deny the petition. Okay. [¶] Call the worker on this case and tell them to go out there and see what's going on with this child." According to the November 7, 2006 minute order, the court denied the petition without a hearing on the ground that the court "cannot reinstate jurisdiction once the child is 18 years old or older." Both Lloyd and D.R. appealed from the order.

## DISCUSSION

As we shall explain, the juvenile court abused its discretion under section 303 and under the rules governing section 388 petitions when it determined it had no jurisdiction and summarily denied Lloyd's petition without a full hearing.

"While the juvenile court is precluded from initiating jurisdiction over a person who has reached the age of 18 [citation], after it has properly obtained jurisdiction, it '. . . may retain jurisdiction over any person who is found to be a dependent child of the juvenile court until the ward or dependent child attains the age of 21 years.' (§ 303; *In re Ruth M.* (1991) 229 Cal.App.3d 475, 480, fn. 4 [280 Cal.Rptr. 74].)" (*In re Robert L.* (1998) 68 Cal.App.4th 789, 793 [80 Cal.Rptr.2d 578] (*Robert L.*) [juvenile court abused discretion by extending jurisdiction over young adults in foster care solely to afford them special financial assistance in completing college education]; see *In re Holly H.* (2002) 104 Cal.App.4th 1324, 1330 [128 Cal.Rptr.2d 907] [juvenile court did not abuse discretion in terminating jurisdiction over 19 year old who entered dependency system when she was three and was in foster care when she turned 18, because she was in no imminent harm, was receiving assistance from the independent living skills program, and was unwilling in the past to use assistance offered to her by the county social services department].)

■ Section 300.2, which discusses the purpose behind the dependency laws, "declares what case law had previously determined: that exercise of jurisdiction must be based upon existing and reasonably foreseeable future harm to the welfare of the child. [Citation.] Similar factors should come into play in determining whether jurisdiction should extend beyond the age of majority [under section 303]." (*Robert L.*, *supra*, 68 Cal.App.4th at p. 794.)[2]

■ "Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanency plan pursuant to Section 366.26 is within the jurisdiction of the juvenile court." (§ 366.4, subd. (a).)[3] Thus, even though the juvenile court terminates dependency jurisdiction in a case, the juvenile court still retains jurisdiction over the

---

[2] Section 300.2 provides in relevant part: "Notwithstanding any other provision of law, the purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. This safety, protection, and physical and emotional well-being may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children. . . ."

Section 303 provides: "The court may retain jurisdiction over any person who is found to be a dependent child of the juvenile court until the ward or dependent child attains the age of 21 years."

[3] Section 366.4, subdivision (a) provides in its entirety: "Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanency plan pursuant to Section 366.26 is within the jurisdiction of the juvenile court. For those minors, Part 2 (commencing with Section 1500) of Division 4 of the Probate Code, relating to guardianship, shall not apply. If no specific provision of this code or the California Rules of Court is applicable, the provisions applicable to the administration of estates under Part 4 (commencing with Section 2100) of Division 4 of the Probate Code govern so far as they are applicable to like situations."

guardianship and any motions relating to that guardianship may properly be filed in the juvenile court. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 300, fn. 4 [19 Cal.Rptr.2d 544, 851 P.2d 826]; *In re Heraclio A.* (1996) 42 Cal.App.4th 569, 574–575 [49 Cal.Rptr.2d 713] (*Heraclio A.*); Cal. Rules of Court, rule 5.740(c).)

"Section 366.3, subdivision (b) provides that where the guardianship is revoked or terminated, the juvenile court may vacate its order dismissing dependency jurisdiction." (*Heraclio A., supra,* 42 Cal.App.4th at pp. 574–575, fn. omitted.) "However, section 366.3, subdivision (b) is not the only statute which authorizes the juvenile court to resume its dependency jurisdiction after it has dismissed such jurisdiction following the establishment of a guardianship. Section 366.4 authorizes jurisdiction over the guardianship by the juvenile court." (*Heraclio A.,* at p. 575.)

Here, Lloyd's petition sought a juvenile court order modifying or setting aside the October 2003 order of legal guardianship and terminating dependency jurisdiction. The petition was filed on November 2, 2006, before D.R. attained the age of 18, a time when he was within the jurisdiction of the juvenile court under section 366.4. Having jurisdiction over D.R. and the guardianship at the time the petition was filed on November 2, 2006, the juvenile court did not automatically lose jurisdiction on November 7, 2006, when D.R. attained the age of 18. Rather, under section 303, the juvenile court had discretion to retain jurisdiction over D.R. until he attained the age of 21. The exercise of such discretion is warranted when there is a showing of "existing and reasonably foreseeable future harm to the welfare of the child." (*Robert L., supra,* 68 Cal.App.4th at p. 794.) This showing overlaps with the factors governing a right to a full hearing on a section 388 petition.

■ In order to proceed by way of a full hearing on a section 388 petition, the petitioner must make a prima facie showing of a change of circumstances and that the proposed change of order is in the best interest of the child. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672 [99 Cal.Rptr.2d 904].) The petition should be liberally construed in favor of its sufficiency. (*Ibid.*) A summary denial of a section 388 petition is reviewed for abuse of discretion. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460 [118 Cal.Rptr.2d 482].)

■ We conclude that the juvenile court abused its discretion under section 303 and under the rules governing section 388 petitions when it determined it had no jurisdiction and summarily denied Lloyd's petition without a full hearing. The petition made a prima facie case for the exercise of jurisdiction under section 303 (that is, it showed existing and reasonably foreseeable future harm to D.R.'s welfare) and for a full hearing on the petition (changed circumstances and best interest of D.R.).

Notwithstanding DCFS's argument that there were no changed circumstances because D.R.'s diagnosis of PTSD and ADHD was the same in 2006 as it was in 2002, and D.R. had always been behind in school, D.R.'s circumstances were more serious in 2006, when he was on the threshold of adulthood. Although three years had passed since the October 2003 order was made, D.R. was not able in November 2006 to undertake many of the responsibilities of independent living, such as washing his clothes, driving a car, and handling his finances. In addition, he had just been prescribed new medication and possibly had a heart problem. The petition thus made a prima facie showing of changed circumstances because the lack of independent living skills at age 18 placed D.R. at risk of current and future harm to his welfare, which risk would not have existed when he lacked those same skills at age 15 and was three years away from adulthood.

D.R. maintains that the retention of jurisdiction and the modification or setting aside of the October 2003 order would have made him eligible for Los Angeles County's Independent Living Program and other services that would help meet his special needs and assist his transition into adult life. DCFS does not contest this point. Rather, DCFS argues only that because Lloyd agreed to the termination of jurisdiction in 2003 when D.R. was behind in school and suffered from mental health issues, "there was no reason to believe that Lloyd could not continue to meet [D.R.'s] needs without juvenile court supervision . . . ."

We deny the motion of DCFS to take additional evidence on appeal, namely, a declaration of Jonathan Halperin, the DCFS social worker assigned to D.R.'s case from June 2002 to November 2006.[4] (*In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1416 [57 Cal.Rptr.3d 863] [Court of Appeal declined to consider postjudgment evidence offered to show issue was moot].) We also deny DCFS's motion to dismiss the appeals on the ground of mootness because its arguments are based primarily on the additional evidence which we decline to consider and because DCFS fails to cite any authority to support its position. (See *In re Ruth M., supra,* 229 Cal.App.3d at p. 480, fn. 4 [appeal from permanency plan order was not moot when child reached age 18 during appeal].) DCFS's claims of waiver are unavailing, as there is nothing indicating that D.R. waived any of his rights. DCFS's assertion that Lloyd lacks standing affords no basis for dismissal because D.R. is an appellant in his own right. Accordingly, DCFS fails to persuade us that the appeals should be dismissed.

---

[4] Among other things, Halperin declared that Lloyd continued to receive funding for D.R. until D.R. graduated from high school in June 2007.

## DISPOSITION

The order of November 7, 2006, is reversed and on remand the juvenile court is to conduct a hearing on the petition for modification filed by Lloyd L. on November 2, 2006. The motions of the Department of Children and Family Services to take additional evidence and to dismiss the appeals are denied.

Rothschild, J., and Jackson, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.