Because the evidence does not show that either Ethan C. or Jesus C. is currently being neglected or at risk of being neglected as the result of William C.'s failure to buckle Valerie C. into her car seat or due to past domestic violence between William and Kimberly G., I disagree with the majority that sufficient evidence supports the finding as to William under Welfare and Institutions Code section 300, subdivision (b) or (f).[1]
 I. JURISDICTION BASED ON DEATH CAUSED BY NEGLECT
The court based jurisdiction in part on section 300, subdivision (f), which defines a dependent child as one whose "parent or guardian caused the death of another child through abuse or neglect." William contends that the "neglect" referred to in subdivision (f) must be criminal negligence not ordinary negligence as found by the juvenile court.[2]
The majority agrees with the trial court's conclusion that a showing of ordinary negligence is sufficient. In my view, resolution of that issue is unnecessary because jurisdiction under subdivision (f) fails for an independent reason. *Page 1005 
Section 300.2, added in 1996, [3] states in relevant part: "Notwithstanding any other provision of law, the purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused [or] being neglected . . . and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (Italics added.)
By its plain language ("[n]otwithstanding any other provision of law") section 300.2 applies to all subdivisions of section 300 including subdivision (f) and requires a showing in all cases that the children arecurrently suffering harm or currently at risk of harm. The Legislature's choice of the italicized language was not accidental. By requiring a showing of current risk under section 300.2, the Legislature has created a safety net to avoid removal where the conduct leading to a child's death does not create a current risk of harm to another child.
In an opinion written by the presiding justice of this division, we recognized that section 300.2 "`declares what case law had previously determined: that exercise of jurisdiction must be based upon existing and reasonably foreseeable future harm to the welfare of the child.'" (In reD.R. (2007) 155 Cal.App.4th 480, 486 [66 Cal.Rptr.3d 151], quoting from In re Robert L. (1998) 68 Cal.App.4th 789, 794 [80 Cal.Rptr.2d 578]; see, e.g., In re Melissa H. (1974)38 Cal.App.3d 173, 175 [113 Cal.Rptr. 139] [dependency jurisdiction requires that "unfitness exist at the time of the hearing"]; In reMorrow (1970) 9 Cal.App.3d 39, 56 [88 Cal.Rptr. 142] [before terminating parental custody and control "[i]t is reasonable to consider . . . whether the conditions which gave rise to the cruelty or neglect still persist"]; In re Zimmerman (1962) 206 Cal.App.2d 835, 844 [24 Cal.Rptr. 329] [terminating custody and control of parents who "`are . . . morally depraved' [requires] such condition of moral lapse be found to exist at the time of the hearing" (italics omitted)].)[4] *Page 1006 
The majority relies on In re A.M. (2010) 187 Cal.App.4th 1380, 1389
which held that dependency jurisdiction under section 300, subdivision (f), does not require a finding of current risk because, unlike other subdivisions of section 300, there is no such explicit requirement in subdivision (f). In re A.M., however, made no mention of section 300.2 and thus failed to note that the statutory language of that section is unambiguous and applies across the board to all the subdivisions of section 300.
Cases may arise in which a parent's negligence in causing the death of a child is sufficient by itself to support an inference that the surviving children are currently suffering harm or at risk of harm. In reA.M. is such a case. There, a newborn died from suffocation while sleeping in the same bed with his father, mother and older brother. The father heard the baby crying and "making sounds like he was struggling to breathe" but instead of checking on the child he just rolled over and went back to sleep. (In re A.M., supra, 187 Cal.App.4th at p. 1385.) (Maj. opn., ante, at p. 1001.)
This is not such a case. The risk that William's negligence posed to Valerie was the same whether or not an accident occurred yet no one would seriously contend that the risk posed by a single instance of failing to place a child in a car seat is a sufficient basis for imposing juvenile court jurisdiction over the child and her siblings. Indeed, in In reJ.N., supra, 181 Cal.App.4th 1010, the court reversed a finding of dependency jurisdiction under section 300, subdivision (b), on facts showing a much more serious lapse in judgment than William's but without the fatal result.
In In re J.N., three children were declared dependents of the court under section 300, subdivision (b), after their father, driving with a 0.20 blood-alcohol level, crashed the family car into a light pole. One of the children, who was not fastened in a car seat, received nine stitches for a laceration to her head. (In re J.N., supra,181 Cal.App.4th at pp. 1014, 1017.) The mother, who was also in the car, and drunk, allegedly failed to prevent the intoxicated father from driving. The Court of Appeal reversed the judgment of dependency as to all three children. As relevant to our case, the court observed that "[d]espite the profound seriousness of the parents' endangering conduct on the one occasion in this case, there was no evidence from which to infer there is a substantial risk [that] such behavior will recur." (Id.
at p. 1026.)
William's single lapse in judgment with respect to Valerie does not support jurisdiction over his other two children under section 300, subdivision (f). *Page 1007 
 II. JURISDICTION BASED ON DOMESTIC VIOLENCE
A child comes within section 300, subdivision (b), if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of . . . her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." A child continues to be a dependent child under subdivision (b) "only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (Ibid.)
The court sustained the petition under section 300, subdivision (b), with respect to William on the ground that "mother and father have a history of domestic altercations. On prior occasions, the mother and father struck each other. Such altercations endangers [sic] the children's physical and emotional health and safety and places them at risk of harm."
William does not dispute the evidence of domestic violence between Kimberly and him, but contends there is no evidence that either child suffered or was at substantial risk of suffering "serious physical or emotional harm" as a result of these altercations as required by subdivision (b).[5] The record supports William.
The record contains no evidence showing that Ethan or Jesus suffered any physical harm as a result of the physical and verbal altercations between their parents or that they were at risk of suffering such harm in the future. Instead of relying on evidence, the DCFS relies on dictum inIn re Heather A. (1996) 52 Cal.App.4th 183, 194 [60 Cal.Rptr.2d 315] (Heather A.) that children are at risk of harm as the result of their parents' physical violence because they run a "substantial risk of encountering the violence and suffering serious physical harm or illness from it." Although the court in Heather A. entertained the possibility that mere exposure to domestic violence might satisfy *Page 1008 
the jurisdictional requirements of section 300, subdivision (b), the court upheld the juvenile court's jurisdiction under subdivision (b) because the record contained evidence of actual physical injury to one of the children resulting from a fight between the parents. "During one of the incidents, Father smashed a glass vase and one of the minors cut her finger and foot on the glass and needed medical attention." (52 Cal.App.4th at p. 188.) The court found that "it was the domestic violence which caused both the breaking of the vase and the delay in cleaning up the broken glass." (Id. at p. 194, fn. 9.)[6]
Even if exposure of children to any domestic violence could alone establish jurisdiction under section 300, subdivision (b), the DCFS has not cited any evidence that such exposure occurred in this case and a review of the record has disclosed none, either before or after the detention hearing.
Further, the record contains no evidence of any domestic violence between the parents since they have lived apart. Nor does the record contain any other evidence of William participating in domestic violence that might reasonably suggest the children would be exposed to such violence in the future. Unlike the father in Heather A., relied upon by the DCFS, there is no evidence that William has been abusive to any other person. In contrast in Heather A. the court affirmed the removal of the children from their father's custody based in part on evidence that the father "move[d] from one domestic relationship to another" and had a "`long history of disruptive emotional relationships with women.'" Thus, the court concluded, even if the father had no further contact with the mother or stepmother, "there was good reason to believe he would enter into another domestic relationship with someone else and his pattern of domestic abuse would continue." (Heather A., supra,52 Cal.App.4th at pp. 194-195.)
Because the record contains insufficient evidence that the children have suffered or are at risk of suffering serious physical harm there is no basis for jurisdiction under section 300, subdivision (b).
The Legislature expressed a preference that children be raised by their parents unless very good reasons, and only those expressly provided by legislation, demand that they be raised by others. Thus we are bound by the provisions of section 300, subdivision (b), which do not permit the juvenile court to assert jurisdiction over a child in the absence of actual physical harm or a substantial risk of such harm and then "only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." And *Page 1009 
the record in this case, as to William, shows that the evidence does not support jurisdiction under section 300, subdivision (b), on the grounds alleged.[7]
[1] All statutory references are to the Welfare and Institutions Code.
[2] Criminal negligence is negligence that is "`aggravated, culpable, gross, or reckless. . . .'" (People v. Penny (1955) 44 Cal.2d 861, 879 [285 P.2d 926].)
[3] Stats. 1996, chapter 1084, section 2, page 7603.
[4] There is a split of authority as to whether proof of a current or future risk of harm is required before jurisdiction can be found under section 300, subdivision (b), which refers in part to a child who "has suffered" serious physical harm. (Compare In re J.N. (2010)181 Cal.App.4th 1010, 1021-1025 [104 Cal.Rptr.3d 478] [evidence must show current risk] with In re Adam D. (2010) 183 Cal.App.4th 1250,1261-1262 [108 Cal.Rptr.3d 611] [current risk not required].) That issue is irrelevant to the determination of jurisdiction under subdivision (f) because subdivision (f) does not contain the past tense ("has suffered") language of subdivision (b). If anything, the Legislature's failure to use the past tense language in subdivision (f) is all the more reason to interpret subdivision (f) as requiring proof of a current or future risk of harm. "`It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.'" (Brown v. Kelly Broadcasting Co. (1989)48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406], citations omitted.)
[5] The petition alleged that the parents' domestic violence placed the children at risk of emotional as well as physical harm. The risk of emotional harm requires proof of "serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care." (§ 300, subd. (c).) Neither the majority nor the Los Angeles County Department of Children and Family Services (DCFS) contends there was sufficient evidence to sustain the petition on the ground of risk of serious emotional damage.
[6] It is not necessary in this case to decide whether a single incident of harm is sufficient to support jurisdiction under section 300, subdivision (b). (See In re J.N., supra,181 Cal.App.4th at p. 1023.) In the case before us, there were no
incidents of harm to the children.
[7] Although there may be sufficient evidence to support jurisdiction over Ethan and Jesus under section 300, subdivision (b) based on William's neglect of the children's health and well-being, neglect was not charged in the original petition nor was the petition amended to add that charge, so William did not have notice of that ground or the alleged facts supporting it. Nevertheless, nothing would prevent the DCFS on remand from amending the petition to allege different factual grounds for jurisdiction so long as William is given reasonable notice and opportunity to defend. *Page 1010