Filed 1/25/24  In re Gerardo M. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re GERARDO M., a Person Coming Under the Juvenile Court Law. | B329704 (Los Angeles County Super. Ct. No. 22CCJP04600) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Appellant, v. GERARDO M., Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry T. Truong, Judge.  Affirmed.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Appellant.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Respondent.

## INTRODUCTION

In 2010, our Legislature passed the California Fostering Connections to Success Act to improve the lives of our state's most vulnerable youth. This Act created, in part, Welfare and Institutions Code section 388, subdivision (e),[1] which allows former foster youth to petition the dependency court to reenter extended foster care. In this appeal, the Los Angeles County Department of Children and Family Services (DCFS) challenges the juvenile court's order granting nonminor, former dependent Gerardo M.'s petition for reentry to extended foster care under the supervision of the dependency court. (§ 388, subd. (e).) Here we decide whether reentry was in Gerardo's best interest and whether Gerardo intended to comply with the statutory requirements of reentry. We conclude the court's ruling was well within its discretion and consistent with the purpose of section 388, subdivision (e), which was to assist former foster youth in their transition to adulthood. We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 2019, Gerardo (born May 2004) was declared a dependent child of the juvenile dependency court (§ 300, subds. (a), (b), (d), and (j)). He was removed from parental custody and ordered suitably placed. After Gerardo's caregiver and maternal aunt moved out of state, Gerardo opted to live in a group home. On October 8, 2020, he was placed at Wayfinder, a short-term residential therapeutic placement facility. On January 3, 2021, Gerard was arrested for his part in the death of David McKnight-Hillman (victim), a staff member at Wayfinder.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

On March 29, 2022, the juvenile delinquency court sustained a petition against Gerardo (§ 602), found him guilty of voluntary manslaughter (Pen. Code, § 192, subd. (a)), and declared him a ward of the court. The court ordered Gerardo to be placed in the care and custody of the probation department and ordered him suitably placed at Dorothy Kirby Center (Dorothy Kirby), a closed and secure facility. Gerardo was ordered to participate in 80 hours of community services, write a letter of apology to the victim's family, and participate in counseling for substance abuse, anger management, and individual counseling as well as random drug testing.

In May 2022, Gerardo turned 18 years old. On July 5, 2022, the juvenile dependency court terminated jurisdiction over him. Gerardo remained under the supervision of the probation department and the jurisdiction of the delinquency court.

On November 22, 2022, while still detained at Dorothy Kirby, Gerardo filed a petition (§ 388, subd. (e)) requesting reentry to extended foster care under dependency court supervision. In the petition, Gerardo stated he planned to meet at least one of the following conditions: (1) attend a high school or high school equivalency certificate (GED) program; (2) attend a college, community college, or a vocational education program; (3) attend a program or take part in activities that would help train him to be employed or would help him solve problems that prevented him from finding a job; (4) work at least 80 hours a month; or (5) he had an inability to participate in (1) through (4) due to a medical condition.

On December 2, 2022, a social worker interviewed Gerardo. The social worker described Gerardo as "not apprehensive" and responsive to her questions. Gerardo stated he regretted the role he played in the victim's death and that regret fuels his anger, which in turn he takes out on others.

Gerardo attempted to obtain Independent Living Program (ILP)[2] services through Dorothy Kirby but was rejected due to his criminal conviction. He stated that perhaps he "should not have been so honest." Although Gerardo was to have therapy once a week at Dorothy Kirby, he now refused to see his assigned therapist based on his belief that she broke his confidentiality. When asked about his goals, Gerardo stated he wanted to be placed on a transitional independent living plan and finish high school. He also stated that he would like to find employment and permanent housing. Gerardo admitted there had been some altercations at Dorothy Kirby with others due to problems with his anger. DCFS was later provided with the incident reports.

The social worker also spoke to Gerardo's probation officer, Araceli Reyes. When asked about Gerardo's release date, Reyes repeatedly stated that he would be released upon DCFS reopening jurisdiction. When asked if dependency jurisdiction was unavailable to Gerardo, Reyes responded possibly in March 2023. However, there was no consensus on the completion date of his program with Dorothy Kirby. Reyes could not provide any information on independent living placements with the probation department.

In its December 8, 2022 response to the petition for reentry, DCFS opined that it was in Gerardo's best interest to remain with the probation department as it suited "his overall mental health and structured needs." DCFS reasoned that it did not "have the capabilities or placement resources" necessary for Gerardo equivalent to the extensive services the probation

---

[2]     The ILP provides training, services, and benefits to assist current and former foster youth in achieving self-sufficiency prior to, and after leaving, the foster care system.

department was already providing him. Gerardo also did not qualify under the provisions of the DCFS extended foster care program due to the severity of his voluntary manslaughter conviction. In addition, Gerardo's criminal conviction demonstrated aggressive behavior. Gerardo admitted "he still has difficulty in controlling his anger and is refusing medical health services, which might pose a risk to himself and . . . others." DCFS concluded that "Gerardo is in need of a more restrictive structural locked placement environment that only probation can provide for him with the services at this time." Therefore, DCFS recommended that the petition be denied and that the probation department continue supervision over Gerardo.

In a January 4, 2023 letter, Reyes stated that Gerardo had "effectively utilize[d] his coping skills to avoid maladaptive behavioral patterns and navigate unfavorable situations." Gerardo met weekly with a mental health therapist to decrease negative symptoms and behaviors. He completed a substance abuse program, participated in behavioral therapy, and appeared "to be motivated to engage in the therapeutic process." Reyes stated that Gerardo's primary goal was to obtain independent living services upon his release from Dorothy Kirby and secure employment. Reyes noted that Gerardo had "made substantial progress toward effectively utilizing coping skills and maintaining sobriety."

On January 6, 2023, the social worker spoke with Jasmine M., Gerardo's mother (mother). Mother reported that she spoke to Gerardo daily, that they get along well, and always have. Mother stated she wanted Gerardo to come live with her. On January 12, 2023, the social worker spoke with mother again. Mother reported that Gerardo would often cry and complain about his family members. She also reported Gerardo had a bad temper that was "worse than hers," and he had "severe anger issues."

Mother reiterated she would be willing to have Gerardo live with her but was worried "she might not be able to manage his impulsivity and anger."

On January 12, 2023, DCFS reported that the probation department informed the social worker Gerardo had not been approved to start ILP services and could only receive such services when his probation was terminated. Gerardo also did not qualify for housing services through the Youth Coordinated Entry Services (YCES) and the Los Angeles Homeless Services Authority (LAHSA) due to "his history," his responses to questions during interviews, and the reluctance on YCES to take on the "liability."

On January 23, 2023, the juvenile delinquency court granted Gerardo's request to be released from Dorothy Kirby to home probation with mother. Gerardo remained a ward of the court. His probation terms were the following: "no committing any crimes, obeying rules of parents, caregivers, [social workers], and no unlawfully threatening[,] hitting, fighting or using physical force on any person."

On February 9, 2023, a social worker spoke with mother on the phone to schedule a home visit. Mother informed the social worker that Gerardo was no longer living with her. Mother reported that on January 30, 2023, Gerardo got very angry with a male neighbor because the neighbor was sexually harassing mother and "calling her bad names." Gerardo smashed mother's cell phone, grabbed a butcher knife from the kitchen, and threatened to kill the neighbor. She did not call the police and instead had his adult sister remove him from the home. Mother was able to restrain Gerardo in the home and take the knife away. Mother stated she was "traumatized" and "scared." She expressed concerns about Gerardo's inability to control his anger and was worried he might harm or kill someone

6

in a rage. Mother did not know Gerardo's current whereabouts but stated she would take him back home when he was mentally stable.

On February 10, 2023, the social worker contacted Gerardo's newly assigned probation officer, Agustina Agredano, to inquire about the knife incident and her knowledge of Gerardo's whereabouts. Agredano stated Gerardo called her on the date of the incident. Gerardo told her he found "paraphernalia" in the home and as a result got into an argument with mother. Agredano was on the telephone with Gerardo during the argument. She was aware Gerardo had smashed mother's phone and that his sister had picked him up. Because his sister declined to provide housing for Gerardo, Agredano located a 90-day shelter for Gerardo. Agredano opined that it was not a good plan for Gerardo to reside with mother. She further stated she did not believe mother's story about the knife incident. That day, mother contacted the social worker and stated she received a call from Agredano about the knife incident. Mother then recanted the knife incident and stated it did not happen.

On February 15, 2023, Gerardo told the social worker that he "does not want counseling" and "refused to participate in counseling when he was at Dorothy Kirby." On February 17, 2023, Gerardo admitted to Agredano that he used methamphetamine on February 8, 2023, but had not consumed any illegal substances since that date. He understood it was a violation of his probation and agreed to participate in a substance abuse program.

On February 23, 2023, the juvenile dependency court held a hearing on Gerardo's petition. Agredano testified that she met with Gerardo once a week. Gerardo was living at the shelter, and he was participating in case management, therapeutic services, and employment training. He was scheduled to participate in an outpatient drug program. Counsel for Gerardo

7

and DCFS then argued the merits of the petition.  The court continued the matter for receipt of a signed reentry agreement between Gerardo and DCFS.

A probation progress report dated March 1, 2023 indicated Gerardo was not in compliance.  When the social worker met with him the following day, she stated that Gerardo appeared "high."  He admitted he did "smoke weed and he smokes weed here and there."  The social worker reported Gerardo was unable to complete the intake with an intensive outpatient drug program because he was missing documents.  Gerardo and the social worker signed a "Transitional Independent Living Plan & Agreement."  Gerardo and the social worker also signed a "Voluntary Re-Entry Agreement For Extended Foster Care."

In an interim review report dated March 9, 2023, DCFS opined that "[c]ontinued supervision by the Probation Department and the juvenile delinquency court is in Gerardo's best interest rather than reentry into Extended Foster Care to be supervised by DCFS because the facts clearly demonstrate that he requires the structure, services and potential placements of that system which were specifically designed to address his complex issues including violence, substance abuse and an inability to control his anger."  In addition, "Gerardo has not made significant progress toward rehabilitation and therefore presents a safety risk."  And "[s]ince Gerardo's release from Dorothy Kirby . . . Gerardo's conduct did not improve, but rather, he regressed."

Agredano provided a probation department progress report, dated March 24, 2023.  Gerardo completed one session of therapy since the last court date.  On March 13, 2023, the social worker had discussed Gerardo's lack of program participation and established goals for Gerardo, which included applying for a California ID, applying for a social security card,

8

rehabilitation enrollment, and employment training. Gerardo was receptive to these recommendations. Gerardo was drug tested on January 25, 2023 and February 17, 2023. He tested negative for all illegal substances. Gerardo admitted to using marijuana occasionally. In the report, Agredano noted Gerardo continued to report to her when requested, and Gerardo had been respectful in all sessions. Gerardo's behavior and compliance were "described as adequate with potential for improvement."

On March 26, 2023, Gerardo was arrested for public intoxication. (Pen. Code, § 647, subd. (f).) Gerardo was subsequently ordered by the adult criminal court to complete 20 hours of an Alcoholics Anonymous (AA) program as part of his pre-plea diversion.

In a report dated May 1, 2023, Agredano stated Gerardo was in violation of his probation. However, Agredano entered into "an agreement [with] Gerardo to participate in a substance abuse program."

On May 1, 2023, the juvenile delinquency court held a hearing and found Gerardo remained a ward of the court. The court stated the January 23, 2023 order of home on probation remained in full force and effect. The court noted that Gerardo currently lived in a homeless shelter and was receiving counseling services. Gerardo was admonished about "picking up an adult case and his lack of desire to attend school."

On May 18, 2023, the hearing on Gerardo's petition in juvenile dependency court resumed. Agredano testified again. She stated that Gerardo enrolled at Homeboy Industries (Homeboy) on May 2, 2023. He attended Homeboy Monday through Friday, from 9:00 a.m. to 3:00 p.m. At Homeboy, Gerardo received employment services and attended a school program and an AA class. The school program provided resources for Gerardo to attain the four credits needed to complete his high school

9

education. Gerardo enrolled in the AA class on May 8, 2023, and had attended three sessions. She reported that once Gerardo receives his credits and completes his AA classes, he will be offered a full-time job at Homeboy. Gerardo also attended three sessions with a therapist at the shelter where he was living. Agredano stated she had been testing Gerardo monthly for substances, and he had only tested positive for marijuana. Gerardo freely admitted he was using marijuana. Agredano testified she spoke to his caseworker at the shelter, and the caseworker stated Gerardo is "doing well," "gets along with the other residents," and "is in good spirits since he started . . . at Homeboy."

Agredano acknowledged that Gerardo violated probation based on his drug use and citation for drinking in public. She emphasized that Gerardo was taking the AA class and would participate in a substance abuse program. Agredano reported Gerardo was "still in compliance." Agredano explained that the juvenile delinquency court was aware of his probation violations but was satisfied with Agredano's recommendation of AA and a substance abuse program. In addition, Gerardo complied with other conditions of probation, such as being responsive to Agredano and her recommendations, and his involvement with Homeboy. After argument from counsel, the court took the matter under submission.

On May 24, 2023, the juvenile dependency court issued its written order granting Gerardo's petition, over DCFS's objection.[3]

DCFS filed a timely notice of appeal.

---

[3]     The court had admitted DCFS reports, juvenile delinquency minute orders, a probation officer progress report dated March 24, 2023, and a voluntary reentry agreement dated February 22, 2023.

## DISCUSSION

I.  *Legal Framework*

Before 2008, most dependent minors became ineligible for foster care on their 18th birthday.  In 2008, Congress passed the Fostering Connections to Success and Increasing Adoptions Act of 2008 (P.L. 110–351) to improve the outcomes of minors who aged out of foster care.  The legislation provided federal funding to reimburse states for part of the cost of providing maintenance payments to eligible nonminors who remained in foster care after their 18th birthdays.  (Congressional Research Service, "Child Welfare: The Fostering Connections to Success and Increasing Adoptions Act of 2008 (P.L. 110–351)," Oct. 9, 2008, pp. 9–10.)

In 2010, in order to take advantage of expanded federal foster care funding, our Legislature passed the California Fostering Connections to Success Act (Assem. Bill No. 12 (2009–2010 Reg. Sess.) Sept. 30, 2010, as amended by Assem. Bill No. 212 (2011–2012 Reg. Sess.) Oct. 4, 2011 (Act)).  As noted by the Act's author, the federal legislation "'provides California with an unprecedented opportunity to access federal funding to improve the lives of our state's most vulnerable youth.'"  (Assem. Committee on Human Resources (Assem. Bill No. 12), Apr. 13, 2009, p. 7.)  The goal of the Act was "to assist foster youth, or 'nonminor dependents' . . . in their transition to adulthood by providing them with the opportunity to create a case plan alongside their case worker tailored to their individual needs, which charts the course towards independence through incremental levels of responsibility.  It is a voluntary program grounded in evidence of how the option of continued support to age 21 can counter the dismal outcomes faced by youth who are forced to leave the foster care system at age 18 . . . .  [The Act] provides nonminors with the option to petition to reenter care if they opt

out of extended care and want to return before age 21, provided they meet the eligibility criteria." (Assem. Committee on Human Resources (Assem. Bill No. 212), March 29, 2011, pp. 3–4.)

As relevant here, section 388, subdivision (e) was added to the Welfare and Institutions Code as part of the Act. This statute provides that a nonminor, former dependent, ranging from 18 to 21 years of age, may petition the juvenile dependency court for purposes of reentry to extended foster care. (§ 388, subd. (e)(1)(A), see § 303, subds. (b), (c); California Rules of Court, rule 5.906.)

Once a nonminor files a petition, "[t]he court shall resume dependency jurisdiction over a former dependent . . . and order that the nonminor's placement and care be under the responsibility of [DCFS] . . . if the court finds all of the following: [¶] (i) The nonminor was previously under juvenile court jurisdiction, subject to an order for foster care placement when the nonminor attained 18 years of age. [¶] (ii) The nonminor has not attained 21 years of age. [¶] (iii) Reentry and remaining in foster care are in the nonminor's best interests. [¶] (iv) The nonminor intends to satisfy, and agrees to satisfy, at least one of the [conditions] set forth in paragraphs (1) to (5), inclusive, of subdivision (b) of Section 11403." (§ 388, subd. (e)(5)(A).) Section 11403, subdivision (b) provides the following conditions: "(1) The nonminor is completing secondary education or a program leading to an equivalent credential. [¶] (2) The nonminor is enrolled in an institution that provides postsecondary or vocational education. [¶] (3) The nonminor is participating in a program or activity designed to promote, or remove barriers to employment. [¶] (4) The nonminor is employed for at least 80 hours per month. [¶] (5) The nonminor is incapable of doing any of the

12

activities described in subparagraphs (1) to (4), inclusive, due to a medical condition." (§ 11403, subd. (b)(1)–(5).)

On appeal, DCFS only challenges the court's findings that reentry to extended foster care is in Gerardo's best interest and Gerardo intended to comply with one of the required statutory conditions for reentry. (§ 388, subd. (e)(5)(A)(iii-iv).) We review the juvenile dependency court's decision to grant the section 388 petition for abuse of discretion. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

II.  *Best Interest*

DCFS contends the court abused its discretion in finding that dependency jurisdiction was in Gerardo's best interest. We are not persuaded.

Section 388, subdivision (e)(5)(A)(iii) requires a finding that "[r]eentry and remaining in foster care are in the nonminor's best interests." DCFS notes that this statutory provision does not define "best interests," and relies on *In re Robert L.* (1998) 68 Cal.App.4th 789 (*Robert L.*) and *In re Holly H.* (2002) 104 Cal.App.4th 1324 (*Holly H.*) for guidance. In *Robert L.,* the issue was whether the juvenile court abused its discretion in continuing jurisdiction under section 303[4] over two nonminors, who had been in long-term foster care with their maternal grandparents and, at the time of the order, were attending college while continuing to live with the grandparents. The court's decision was based upon a finding that continued jurisdiction would allow the grandparents to continue receiving funding. This would

---

[4]  Section 303 states: "The court may retain jurisdiction over any person who is found to be a ward or dependent child of the juvenile court until the ward or dependent child attains 21 years of age."

13

allow them to pay for the nonminors' clothing, food, and shelter, and thus enable the nonminors to continue as full-time students. (68 Cal.App.4th at p. 793.) The appellate court stated that "[i]n determining whether to terminate jurisdiction . . . , the issue to be addressed is the best interest of the child." (*Ibid.*) Because "best interest" had not been defined, the court was guided by section 300.2,[5] "which discusses the purpose behind the dependency laws." (*Id.* at p. 794.) Based on this statute, the court concluded "that exercise of jurisdiction must be based upon existing and reasonably foreseeable future harm to the welfare of the child." (*Ibid*.) The court observed the record was devoid of any evidence that the nonminors were being physically, sexually or emotionally abused, neglected, or exploited, or that such harm might occur in the future. The court concluded that continued jurisdiction on the "sole basis" that such would afford special assistance to allow the nonminors to complete their college education was an abuse of discretion. (*Id.* at p. 797.)

In *Holly H.,* the juvenile court terminated jurisdiction over a nonminor after finding the social services agency had met the requirements of (the then

---

[5]    Section 300.2 states: "Notwithstanding any other provision of law, the purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. This safety, protection, and physical and emotional well-being may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children. The focus shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child. The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment."

recently enacted) section 391 by providing the nonminor with certain resources,[6] and that the nonminor had "given every indication that she [did] not want the assistance of the juvenile dependency system." (104 Cal.App.4th at p. 1337.) The nonminor appealed. The appellate court adhered to the decision in *Robert L.*, "that jurisdiction should be retained by the juvenile court beyond a dependent's 18th birthday only when there is an existing or reasonably foreseeable threat of harm to the child." (*Id.* at p. 1327.) In light of this standard and "the autonomy to which a person over 18 is entitled," the court held it was not an abuse of discretion to "give substantial deference to the [nonminor's] wishes before deciding to retain jurisdiction." (*Ibid.*)

The two cases DCFS relies on for the "best interest" analysis predate the codification of section 388, subdivision (e), and are therefore not instructive. (See *In re Aaron S.* (2015) 235 Cal.App.4th 507, 520.) In addition, both cases dealt with the issue of whether to terminate jurisdiction over a nonminor; *Robert L.* under section 303 and *Holly H.* under section 391. We note that, unlike the nonminor in *Holly H.*, Gerardo gave every indication he wanted to reenter dependency jurisdiction in order to take advantage of the benefits provided by the Act. Here, we consider a nonminor's request for resumption of dependency jurisdiction *after* such jurisdiction was terminated.

Moreover, a "best interest" finding under DCFS's definition would run counter to the purpose of the statute. The purpose of section 388, subdivision (e) was to extend payment benefits and provide transitional support services for eligible nonminors who would otherwise age out of the foster care system.

---

[6] "Section 391 contains a legislative directive that before jurisdiction of the juvenile court over a dependent child who has reached age 18 is terminated, certain minimal assistance and documentation be afforded the youth." (*Holly H., supra,* 104 Cal.App.4th at p. 1333.)

15

The Legislature found that former foster youth, when compared with other young adults of the same age, are less likely to complete high school, attend college, or be employed. (Assem. Committee on Human Services (Assem. Bill No. 12), Apr. 13, 2009, pp. 6–7.) They are also more inclined to become homeless, incarcerated, and receive government assistance. (*Ibid*.) As the court explained in *In re Nadia G.* (2013) 216 Cal.App.4th 1110, the purpose of the Act was to assist nonminors who were being left to fend for themselves when they turned age 18, often without the skills and resources to be self-supporting. (*Id.* at pp. 1117–1118; see *In re Jesse S.* (2017) 12 Cal.App.5th 611, 617–618; *In re K.L.* (2012) 210 Cal.App.4th 632, 637 [the Act provided "assistance and support in developing a personalized transition plan for all youths before they age out of foster care"].)

In its ruling, the juvenile court found reentry to extended foster care was in Gerardo's best interest because "the services, support, and oversight offered through the dependency system is superior to that of the juvenile justice system." "Under the dependency court's jurisdiction, Gerardo would have access to social workers and lawyers who specialize in Nonminor Dependency Law, as well as the linkages necessary to transition into full-fledged adulthood." The court further found that "[h]aving completed his program at Dorothy Kirby Center, it is appropriate for the dependency system to assist Gerardo as he reintegrates in mainstream society as an adult." The court concluded, "Gerardo deserves a chance to avail himself of [the Act's] services to become a more productive and stable adult—for his sake and for the sake of society at large."

We recognize, as the trial court did, that the purpose of the Act is to provide financial support, employment and educational services to nonminors, who like Gerardo, have faced adversity and do not yet have the

skills to be independent. We acknowledge that Gerardo committed a heinous crime as a minor and was prosecuted for it. The record indicates Gerardo has made progress in setting constructive goals and developing appropriate coping skills. With the guidance of his probation officer and the mentorship and vocational support of Homeboy, Gerardo has taken steps toward becoming a contributing member of the community. While we cannot predict the future, we believe section 388, subdivision (e) gives nonminors such as Gerardo an opportunity to change the trajectory of their lives and become productive members of society.

In light of the statutory intent of section 388, subdivision (e), we hold that the court acted within its discretion in finding resumption of dependency jurisdiction was in Gerardo's best interest.

III.   *Statutory Conditions of Reentry*

DCFS argues the court also abused its discretion in finding Gerardo intended to comply with the statutory conditions of reentry. We disagree.

In his petition for reentry to extended foster care, Gerardo indicated that he planned to meet the conditions listed in subdivision (b) of section 11403. Gerardo voiced his educational and occupational goals to his social worker, and both of his probation officers. Gerardo's most recent probation officer echoed those goals at both hearings on the petition. Specifically, Gerardo wanted and intended to finish high school and attain employment and permanent housing. He also agreed to a substance abuse program and employment services.

In clarifying its intention for the Act, the Legislature stated that a nonminor "should not necessarily already be enrolled in school or have a job in order to restart this assistance, but rather be able and express their

17

intention to comply with the eligibility standards." (See Assem. Committee on Judiciary (Assem. Bill No. 212), March 29, 2011, p. 5.) Contrary to DCFS's contention, a nonminor is not required "to demonstrate that he or she already meets one of the allowable five work or education participation criteria" set forth in 11403, subdivision (b). (*Ibid.*) A failure to meet any of the statutory requirements is an issue for a future hearing. We decline to adopt DCFS's assessment of Gerardo's likelihood of success. Therefore, we conclude the court acted within its discretion in finding Gerardo intended to comply with these statutory requirements.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


COLLINS, Acting P. J.


MORI, J.

18