Filed 9/26/14  In re I.M. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re I.M. et al., Persons Coming Under Juvenile Court Law. | B252547 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK67049) |
| Plaintiff and Respondent, | |
| v. | |
| V.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Carlos E. Vasquez, Judge.  Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Timothy M. O'Crowley, Deputy County Counsel, for Plaintiff and Respondent.

_____

V.H. (Mother), the mother of I.M., Es.B., Esh.B. and A.B. appeals from an order sustaining a Welfare and Institutions Code[1] section 300 petition and declaring the children dependents of the juvenile court. Mother claims the jurisdictional findings are not supported by sufficient evidence that there is a current substantial risk of harm to the children. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

On June 27, 2013, the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition on behalf of I.M. (age 17), Es.B (age 10), Esh.B. (age nine), and A.B. (age eight). N.B. (Father), who is the father of Es.B., Esh.B. and A.B., is not a party to this appeal. I.M.'s father is O.M., whose whereabouts are unknown, is also not a party to this appeal.

As sustained, the petition alleged that Mother and her male companion, Father, have a history of engaging in violent altercations. On June 23, 2013, in I.M.'s presence, Father choked Mother causing her to have difficulty breathing. Mother struck Father with her hands inflicting marks to Father's arm and neck. Father pushed Mother. Father was arrested for domestic violence and child endangerment. Father's violent conduct against Mother endangered the children's physical health and safety and placed them at risk of physical harm.

The detention report stated that the children resided with Mother and an adult sister. On June 23, 2013, a child abuse referral was generated alleging emotional abuse from domestic violence in the home. The report stated that Father and Mother were arguing when the incident became physical. Father grabbed Mother with both hands around her neck, lifted her off the floor and walked down the hallway.

I.M. and Esh.B. witnessed the incident. I.M. told the social worker he came out of his room when he heard noise from Mother and his stepfather. I.M. saw Father with two hands around Mother's neck and when Father noticed him, he let go of Mother's neck.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Esh.B. stated he looked out into the hallway and saw Father and Mother were physically fighting. Esh.B. said he did not see Father choking Mother but observed them striking one another. When asked how it made him feel, Esh.B. told the social worker he did not feel anything watching his parents and just went back into his room because he is accustomed to his parents fighting. The children stated they did not want Father to hurt their Mother. The children stated this was not the first time that Mother and Father have been involved in incidents of domestic violence.

Mother also indicated that this was not the first domestic violence incident in the home. Mother stated Father was arrested in 2007 for domestic violence. According to Mother, "once Father completed his classes things were good for a long time." Mother reported that there had been more domestic violent incidents through the years; however, she had not phoned the police during those incidents.

Mother said the current incident was the most severe and caused her to fear for her life. The incident began while Father was on "You Tube" reading about divorces. Mother said she was asking Father questions and he put earplugs in his ears to listen to music. Father would not listen to her, so she snatched the earplugs from his ears. Mother reported that this was something she did all the time. This time Father stood up and was very upset; and they started to argue. Mother said she may have provoked Father, but she did not feel that it was serious enough for Father to choke her with both hands, lift her from the floor and walk down the hall.

Father has a criminal history and was incarcerated at the time the detention report was written. The social worker interviewed Father on June 24, 2013, at the Pomona Police Department. Father denied choking Mother and stated "that Mother told his stepson to say Father choked Mother." When Father was told that more than one child witnessed the incident, Father said that he may have shoved Mother, but he did not choke her. Father said he and Mother were getting divorced, and he would not return to the family home. Father indicated that, when he was a child, he and his brother were in foster care in New York. He stated that the social worker had his permission to detain the children from his custody and release them to Mother. Father did not want the children

3

to be separated from Mother. He stated that once he was released from jail he would not return to the family home.

Department reported that the family had five prior referrals and investigations for allegations of emotional abuse and general neglect. The family had a voluntary family maintenance agreement in May 2004 after an emotional abuse allegation was substantiated against Father. A February 7, 2007 referral for physical abuse by Father was closed as unfounded. A February 8, 2007 referral for emotional abuse and general neglect by Mother was closed as unfounded. On February 13, 2007, the family had a referral for emotional abuse and general neglect by Father and Mother. The referral was closed as unfounded for emotional abuse but substantiated for general neglect and sibling risk as to Father. The allegations against Mother were closed as unfounded. On March 4, 2009, the family had a referral for emotional abuse by Mother, which was closed as inconclusive.

The children all indicated that they were happy in their home and did not want to be separated from their Mother. Mother indicated that she was able to protect the children and was not allowing Father to return to the home. On June 25, 2013, Mother obtained a restraining order to protect her and the children.

The social worker assessed the children as being at a high risk for future abuse or neglect because of the current incident and previous investigations. Department recommended mental health and developmental assessments for the children to coordinate/provide treatment and/or services for the children. Department further recommended that the children be detained from their fathers and remain with Mother.

Department attached a copy of the Pomona Police Department report documenting Father's arrest on June 23, 2013, for domestic violence (Pen. Code, § 243, subd. (e)(1)) and child endangerment (Pen. Code, § 273a subd. (b)). Mother told the arresting officers that she and Father had been married since 2005 and had three children together. The officers reported there were no prior domestic incidents. Mother and Father did not show any signs of being under the influence of alcohol. Mother told police officers that Father choked her after she got into a verbal argument with him about a divorce. Father became

4

angry and put his hands around her neck and began to choke her with enough force that she could not breathe. As Father was choking her, he was carrying her across the hallway. One of the children,[2] who was listed in the police report as the second victim, came out and saw Father choking Mother. Father then released Mother and went outside the home to smoke a cigarette. Mother then called police and locked the door.

The second victim told police officers that he was sleeping in his bedroom. He overheard an argument between Mother and his stepfather. As he walked out of his bedroom, he saw Father choking Mother with both hands around her neck. Once Father saw the child, Father stopped choking Mother and went out the front door.

Father told police officers that he was upstairs watching "You Tube" videos about divorce when Mother kept interrupting him. The two became involved in a verbal argument. He attempted to avoid the argument by putting headphones on and listening to music. He went downstairs but Mother followed him, pulled the headphones off Father's ears, which caused his eyeglasses to fall off his face and break. Father then walked upstairs and put the headphones back in his ears, which angered Mother. Mother followed him upstairs and began assaulting him. Father said Mother cut him in the neck and arm with her hands. Father then went downstairs and outside to smoke a cigarette. Mother locked the door on him. Father said he did not see the child during the incident. Father overheard Mother telling the child to lie and say that he saw Father choking Mother so that she did not have to go to jail.

The police report indicates that Father had a four-inch scrape on his inner right bicep and two cuts on the left side of his neck. Mother did not have any visible injuries.

Mother and children could not attend the initial detention hearing on June 27, 2013. At that time, the juvenile court made emergency findings, removing the children from Father's custody. At the continued detention hearing on the following day, the court found a prima facie case for detaining Father's children from his custody. Father was given monitored visits with his children after contact with Department. The

---

[2]     The child was not identified by name in the police report.

5

children remained released to Mother with family maintenance services. Mother's counsel advised the court that Mother was allowing the temporary restraining order to expire.

The jurisdiction/disposition report stated Father was released from custody on June 25, 2013. Mother reported she attended a mediation hearing through the criminal courts as to Father. Mother learned that the court initiated a three-year permanent restraining order prohibiting Father from having contact with her or the children.

I.M. told the dependency investigator that the domestic violence incident occurred early in the morning when he was awakened by Mother and Father's arguing. As he walked out of his bedroom, I.M. heard Mother tell Father to "'get out.'" I.M. then saw Father grab Mother by the neck. I.M. said, "'I was like what the heck? [Mother] called the police. This is the first time I saw this. They would argue sometimes. He's never done anything to me and I wouldn't defend him. I really don't see him as a threat to me.'"

The younger children were very shy and did not communicate very much. However, they indicated that they were very happy in the home and did not have any problems. They reported feeling safe in the home. I.M. said that they did not need a social worker because they were safe.

The investigator noted the emergency response social worker said that I.M. and Esh.B. had both witnessed the incident. Both children also reported that this was not the first time that Mother and Father had been involved in incidents of domestic violence.

Mother was interviewed by the dependency investigator on August 12, 2013. Mother said that Father and she did not have a history of domestic violence. She stated that there had been two incidents in which police were involved. The first incident occurred in 2004 when they first lived together. Mother was pregnant and had an infant. There were some financial issues. She said it was stressful for both of them. At that time, Father took a domestic violence class from which he appeared to have benefitted. Father changed his behavior and they worked through the issue. Mother denied that there were any more incidents or problems until the June 2013 incident.

Mother said they were already contemplating a divorce when the June 2013 incident occurred. They had returned home from an Islamic Mosque event when Mother wanted to talk to Father about the divorce. Mother said that, after Father put the earphones on, she pulled them from his ears, which is something she had done in the past. However, this time they began to argue. He became upset and grabbed her by the neck. Mother denied hitting Father but reacted by grabbing his hands to remove them from her neck.

Mother said she remembered the rage and emotion in Father's eyes. They had been having problems and there was a lot of tension. Mother was tired of his infidelity and his failure to provide financial support for the family. Mother called I.M. to be a witness because she thought Father would have lied to the police and would have denied choking her. Mother said she wanted to be clear that the other children did not witness "'the two incidents we have had'" and were never exposed to it.

The dependency investigator noted that Father had not made himself available for a statement and has had no further contact with Department.

Mother reported that she is an Air Force veteran and currently is a nursing student. Father and Mother had been together for 12 years. Mother said she has had two marriages through the Islamic faith including an eight-year marriage to Father. Neither of the Islamic faith marriages was legally documented.

The dependency investigator noted that Mother is employed and attending school; Mother had provided a stable home for the children; and she had family and church support. Mother indicated that she had the situation under control and felt that she was protective of the children. Mother reported that she was complying with the criminal protective order by not allowing Father to have any contact with her or the children. Mother said she had no further desire for a relationship with Father and he will not reside in the family home.

Mother wanted the dependency case terminated because she felt there was no need for dependency proceedings. Mother stated she would not risk having the children removed from her care by violating the protective order. She was adamant about not

having Department or court intervention and refused voluntary services. Mother believed she had acted responsibly by calling the police and complying with the criminal protective order.

The dependency investigator reported that I.M. had received a citation for petty theft and failed to appear for his hearing. Mother denied knowing that there was a delinquency hearing on July 30, 2013. A second court date was set for August 9, 2013. The social worker notified Mother of the hearing. However, neither Mother nor I.M. appeared at the hearing. Mother called the courtroom and said she had car trouble. Mother requested to attend the hearing by telephone, which could not be accommodated. The hearing was rescheduled for September 20, 2013.

The assessment of the dependency investigator was that the children were safe in Mother's home. However, there was some concern regarding the domestic violence between the parents. Although Mother stated she was no longer in a relationship with Father, the social worker opined that the family needed counseling services. The children were aware of the domestic violence and had been exposed to it. Mother had been involved with domestic violence on more than one occasion with Father.

Department recommended that the children be declared dependents of the juvenile court and remain placed with Mother. Department also recommended family maintenance serves for Mother and family reunification services for Father. Department requested the court order Mother to participate in individual counseling to address domestic violence as a victim and order Father to complete domestic violence classes, parenting education, and comply with the criminal protective order.

In a last minute information for the court, Department reported that Father was convicted of domestic battery (Pen. Code, § 243, subd. (e)) on June 25, 2013. Father was ordered to complete a 52-week domestic violence treatment program, pay a $720 restitution fine, and comply with a protective order.

The jurisdiction/disposition hearing was continued to October 24, 2013, because Father's residence was unknown. Mother's counsel advised the court that Father was homeless.

8

At the continued hearing, the juvenile court admitted the detention report, the jurisdiction/disposition report and the last minute information. No other evidence was admitted. Mother requested the court dismiss the petition because: she was no longer living with Father; there was a three-year criminal protective order in place; the children had not seen Father; and Mother had no intention of having contact with Father. The children's counsel joined in Mother's request for dismissal.

Department argued that Mother's and children's arguments were more suited to disposition than jurisdiction. Department's counsel asserted that the evidence showed domestic violence in the home. The first incident occurred in 2004. Counsel noted that I.M. said he heard Mother and Father argue many times but it was the first time there was a physical altercation. The physical altercation was "pretty egregious" in that Father choked Mother with enough force that she could not breathe. I.M. witnessed the choking incident. Counsel argued the case should be open so that Mother could have counseling as a victim of domestic violence and the children could avail themselves of counseling services.

The juvenile court stated: "Based upon the evidence that has been presented and the arguments of counsel, the court does believe that the Department . . . makes some very valid points in this case. The court's concerns are the fact that this was ongoing, this domestic violence went on for a lengthy period of time even by Mother's own account. There were several incidents in 2004, and there was this incident in 2013. [¶] In the detention report . . . the children stated that this was not the first time that the Mother and Father have been involved in incidents of domestic violence."

The juvenile court found that Department proved by a preponderance of the evidence that the allegations of the petition were true. The court sustained the petition under section 300, subdivision (b) and dismissed a count under subdivision (a).

The juvenile court then allowed comments on disposition. Department asserted Mother should have domestic violence counseling and the children be assessed for counseling. Mother objected to having individual counseling for "one incident" and because the incident in 2004 was nine years ago.

9

The juvenile court found that individual counseling for Mother was appropriate given the case issues.  The court stated:  "I have to say, [Mother], as I have sat here and watched your reactions to what is going on here, I am really troubled because I just think that you don't—you just don't see the seriousness of the situation that you expose your children to.  [¶]  Domestic violence in the home to a child is very traumatic, and I think in this case that there is a need for your children to be assessed for counseling because of the effects that that ongoing violence may have had.  Now, as far as I know, there were the three incidents that were mentioned in the reports . . . ."

Mother then queried, "Three?"

The court responded that domestic violence did not always or typically occur in "just an isolated incident."  The court explained:  "So what I see before me is a lengthy period of time where there was domestic violence in the home, and I think that a positive first step for you is to accept that this is a serious issue.  And the court is looking at this as a serious issue, and you need to accept that."  Mother responded that she did take the issues seriously and that her situation is not one of "ongoing domestic violence" given that she acted appropriately.  The court replied that Mother might "have another relationship in the future."

The court ordered the children placed in Mother's custody.  Mother was ordered to participate in individual counseling to address domestic violence.  The court ordered assessments for counseling for all the children.  The court denied family reunification services for Father and O.M. pursuant to section 361.5, subdivision (b)(1).  Mother filed a timely appeal.

## DISCUSSION

Mother claims that the juvenile court should not have exercised its jurisdiction under section 300, subdivision (b), because there was insufficient evidence that the children suffered or will suffer serious physical harm as a result of the parent's willful or negligent failure to adequately supervise or protect them.  Section 300, subdivision (b) permits the juvenile court to adjudicate a child as a dependent when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or

10

illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

The primary purpose of dependency statutes is to protect children by safeguarding their physical and emotional well-being. (§ 300.2; *In re Nolan W.* (2009) 45 Cal.4th 1217, 1228; *T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 42-43.) Section 300.2 states: "Notwithstanding any other provision of law, the purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. This safety, protection, and physical and emotional well-being may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children. The focus shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child. . . ."

We review the juvenile court's jurisdictional and dispositional findings to determine if they are supported by substantial evidence. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1344.) "We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding." (*In re James R., Jr.* (2009) 176 Cal.App.4th 129, 135; see also *In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.)

Citing her actions after the June 23, 2013 domestic violence incident, Mother claims jurisdiction was inappropriate because there was no risk to the children at the time

11

of the hearing.  (See *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 672-674.) Relying on *In re John M.* (2013) 217 Cal.App.4th 410, 419 Mother claims there was no evidence of "ongoing" domestic violence in her home to support jurisdiction.

While Mother's conduct in addressing the case issues is commendable, we disagree with her that the evidence is insufficient to support the juvenile court's findings. Section 300, subdivisions (b) supports jurisdiction in cases such as this when a child is exposed to a parent's domestic violence.  (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598-599; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717; *In re Heather A.* (1996) 52 Cal.App.4th 183, 193-194.)

The record shows that Mother and Father engaged in a physical altercation on June 2013.  Mother admitted that they began arguing about a divorce in the early morning of June 23, 2013.  When Father put on earphones apparently so he could not hear Mother, she snatched them from his ears.  There was evidence that Father then went downstairs and placed the earphones on his ears but Mother followed him and snatched the earphones again.  Father said that, when Mother snatched the earphones from his ears, she caused his eyeglasses to fall to the floor breaking them.  Father then proceeded to choke Mother with both hands.  Father carried Mother through the hallway as he choked her to the point that she could not breathe.  Mother said she called I.M. from his bedroom to witness the choking incident.  I.M. reported that he had been awakened by the argument between Mother and Father.  Esh.B. reported that he heard the argument and came into the hallway.  Although he did not see Father choking mother, he saw his parents hitting each other.  He did not feel anything when he saw them because he was accustomed to seeing them fight.

Moreover, Mother's actions during the hearing indicated that she was in denial about the seriousness of the affect of domestic violence on the children.  Rather than acknowledging the risk that the long-term domestic violence might pose to her children, Mother was hesitant to cooperate in the process of assessing the children.  Mother was also hesitant to cooperate with individual counseling to deal with her own domestic violence issues which had brought the family to the court's attention.  Mother's denial

12

that there were unresolved case-related issues was a sufficient basis to assess the risk of detriment to her children. (*In re A.J.* (2011) 197 Cal.App.4th 1095, 1104-1106.) Both Mother and the children reported that this was not the first incident of domestic violence between Mother and Father. Mother reported that Father was arrested for domestic violence in 2007. In addition, Mother told the social worker that things were better for a long time after Father completed domestic violence classes. However, Mother also told the social worker that there were many unreported incidents of domestic violence over the years. At the jurisdiction/disposition hearing and on appeal, Mother maintained that there were only two documented incidents of domestic violence during the couple's relationships. However, as she concedes in the reply brief, there were actually three incidents in 2004, 2007, and 2013. The 2004 incident involved a voluntary family maintenance agreement. The 2007 incident involved Father's arrest for domestic violence. Furthermore, the record shows that Mother admitted there were ongoing incidents of domestic violence between the couple, which were not reported to authorities.

Under the circumstances, the juvenile court had sufficient evidence to find the children were at risk within the meaning of section 300, subdivision (b). The juvenile court's orders directing assessments for counseling for the children and participation by Mother in individual counseling to address domestic violence are supported by substantial evidence.

Mother also claims that jurisdiction over I.M. is no longer warranted because he turned 18 in November 2013 and any counseling issues for him could be addressed in his delinquency case. Jurisdiction over I.M. was appropriate because at the time of the hearing he was only 17 years old. (§ 303, subd. (a); *In re Shannon M.* (2013) 221 Cal.App.4th 282, 292; *In re D.R.* (2007) 155 Cal.App.4th 480, 486.) While the juvenile court may not initiate jurisdiction over a person who has attained the age of 18, the court has discretion to retain jurisdiction of the dependent child until the age of 21. (*In re D.R.*, *supra*, at p. 486; *In re Robert L.* (1998) 68 Cal.App.4th 789, 793.) Furthermore, Mother did not raise the issue of I.M.'s delinquency case in the court below. In any event, there

13

was no evidence that the delinquency court would address or consider the parents' domestic violence issues in the proceedings of I.M.'s petty theft case.

## DISPOSITION

The juvenile court's orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:


_____, Acting P. J.          _____, J.

ASHMANN-GERST                          CHAVEZ

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14