Filed 5/19/15  In re E.P. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.P., a Person Coming Under the Juvenile Court Law. | H041576 (Monterey County Super. Ct. No. J47380) |
| MONTEREY COUNTY DEPARTMENT OF SOCIAL AND EMPLOYMENT SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> H.P., <br><br> Defendant and Appellant. | |

In 2013, the Monterey County Department of Social and Employment Services (Department) filed a petition to bring E.P. (child) within the jurisdiction of the juvenile court under Welfare and Institutions Code section 300.[1]  Following a hearing, the court granted physical custody of child to his noncustodial father (father) and terminated its jurisdiction.  H.P. (mother) appealed, contending that the court erred because substantial evidence did not support its finding that continued supervision was not necessary and that it erroneously denied her reunification services.  We agreed with mother and remanded the matter to the juvenile court, directing it to hold a hearing to address the issues of continued supervision and reunification services.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

Following remand, the juvenile court conducted a hearing on whether continued supervision was necessary. Ultimately, the court found supervision was unnecessary and reactivated its prior order terminating jurisdiction. In so doing, the court relied on a letter and documents filed by the Department, which included evaluations and progress reports documenting child's care in Kansas, where father had previously lived. At the time of the hearing, father had moved to Florida. Mother has now appealed for the second time. She argues the juvenile court failed to comply with this court's directions on remand, because it did not afford her a full hearing and it relied on outdated information when making its decision. For the reasons set forth below, we disagree and affirm the order terminating jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

*The First Appeal*

On June 26, 2014, this court filed its unpublished opinion in *E.P.*, *supra*, H040334. In *E.P.*, mother argued the juvenile court erred when it terminated jurisdiction and denied her reunification services, because there was no substantial evidence to support the court's finding that continued supervision was not necessary.

We reversed and remanded the matter back to the juvenile court, concluding the court's determination that supervision was unnecessary was unsupported by substantial evidence. (*E.P.*, *supra*, H040334.) We noted the record showed child had significant and untreated developmental issues. Although father had stated he planned to enroll child in a child care program and had educated himself about child's problems, there was no

---

[2] Our unpublished decision in mother's prior appeal (*Monterey County Department of Social and Employment Services v. E.P. et al.* (June 26, 2014, H040334) (*E.P.*)) contains a more detailed account of the facts and procedure of the underlying dependency case. Mother filed a request for judicial notice of both the record in that prior appeal and this court's opinion, which we previously granted. Since our prior opinion summarizes the history of the case, we will not repeat those facts again here.

evidence that he had child formally evaluated, or if there was appropriate treatment in Wichita, Kansas, where father had recently moved. An evaluating psychologist and the social worker expressed no concerns about father, but their opinion was based only on seeing father and child together for approximately one hour. Additionally, the social worker's conclusion that father's husband could be a positive influence on child's life was based on one phone call.

We also concluded that the court's failure to consider reunification services was based on its erroneous decision to terminate jurisdiction.

Thereafter, we reversed and remanded the matter to the juvenile court, directing it to "hold a hearing addressing the issues of continued supervision and reunification services" and to "render a decision addressing those issues based on the facts as they exist[ed] at the time of the hearing." (*E.P.*, *supra*, H040334.)

*Subsequent Proceedings*

After we issued the opinion in the prior appeal, the Department filed a letter with the juvenile court on July 31, 2014. The social worker wrote that she had called father on July 8, 2014, and had informed him that she was seeking information about the services child had received while under his care. Father and child had recently relocated to Florida, and father believed child was doing well. Father was still waiting to get services provided in Florida due to the recent move.

The social worker spoke with a secretary at the school in Florida where child was enrolled, who confirmed that child was set to attend an autism class. The social worker left a message for child's pediatrician but had not received a call back. However, the social worker was able to confirm that child was scheduled for a dental exam.

The social worker contacted Caitlin Smith, who worked at Small Talk Pediatric Speech Therapy in Wichita, Kansas. Child had taken classes at the facility, and Smith

3

expressed the opinion that father was "outstanding" with child, and that the two had a "wonderful" relationship. Smith said father was very loving with child.

Attached to the Department's letter were various documents, test reports, and photographs that chronicled child's life with father, which included the following:

1. Audiology services evaluation dated January 9, 2014: The evaluation determined that child had hearing loss in his left ear.

2. Speech therapy evaluation dated January 9, 2014: The assessor noted that child had a severe delay in speech and language development and social communication skills. The evaluation recommended that child receive speech and language therapy twice weekly to address these issues.

3. Occupational therapy discharge note dated May 28, 2014: Child had received occupational therapy while living in Kansas. The occupational therapist noted that father worked well with child on home program suggestions and assisted child with being as independent as possible. Child was progressing, but additional occupational therapy was recommended for child's fine motor, visual motor, self-help, and play skills.

4. Individualized education program dated December 16, 2013: Child's prior school in Wichita, Kansas, had developed an individualized education program for child to address his needs.

5. Psychological evaluation report: Child had been evaluated by a licensed psychologist. The psychologist interviewed child on January 20, 2014 and tested him in February 2014. Child was diagnosed with autism and global development delay. The psychologist recommended that father consider looking into early childhood programs at schools close to their home in Wichita and that the school develop an individual education plan to customize a curriculum. Occupational and speech therapy were recommended.

All of these attached reports were from programs and specialists in the Wichita, Kansas area, where father and child had lived before their move to Florida.

On August 5, 2014, the court held a setting hearing where it continued the matter and ordered briefs from the parties to be due on August 14, 2014.

On August 14, 2014, mother filed a declaration regarding the appropriate procedure required for the juvenile court upon remand. On August 19, 2014, the court held a hearing but continued the matter to receive the remittitur from this court. On August 26, 2014, the court continued the hearing to October 14, 2014.

On October 14, 2014, the date of the hearing, mother filed a document titled "Mother's Position in Response to Remittitur" and a declaration in support of her position. Mother posited that the juvenile court currently had no information about who was living in father's household and what responsibility the other household members may have regarding child's care. For example, mother pointed out that there was no information about whether father still lived with his husband. Additionally, since jurisdiction was terminated father had no obligation to provide updates or information about how child was progressing in school. After the move to Florida, there had been no further updates about whether child's medical and psychological needs were being met, or who was taking care of child when father was working or away. Mother also declared that father had limited her ability to see and talk to child over Skype. Mother asserted that father only provided her with cursory information about child's well-being.

The court held a hearing on October 14, 2014, during which it invited argument from the parties. The Department noted that it had filed a packet of papers, including the letter and the attached reports, in July of that year, and that the court had all the information it needed to render a decision on the matter. Mother asserted that her position was that this court had ordered the juvenile court to hold a hearing to address the issue of continued supervision and reunification services.

5

Thereafter, the court asked mother's counsel if she had anything further she wished to add, or if she would like to submit on the documents she had already provided. Mother's attorney never expressly responded to the court's query but did not object when the court asserted that it would "rule by the end of the day" based on the documents already submitted by the parties.

That same day, the court issued an order finding that continued supervision was not necessary, terminating the dependency. The court never reached the issue of reunification services. Mother appealed.

### DISCUSSION

On appeal, mother argues the court failed to comply with this court's directions on remand; therefore, its order terminating jurisdiction is void. In the alternative, she argues that substantial evidence does not support the court's finding that continued supervision was unnecessary. We reject mother's arguments and affirm the juvenile court's order.

1. *Compliance with Remand*

On remand, this court directed the juvenile court to conduct a hearing addressing the issues of continued supervision and reunification services based on the facts as they existed at the time of the hearing. Mother claims the juvenile court's procedures failed to comply with this court's directions, because she was not given an opportunity to be heard at the hearing held on October 14, 2014, and because the court's decision was based on documentation filed by the Department that largely consisted of purportedly outdated reports prepared in January and February 2014.

a. **Applicable Law**

"When there has been a decision upon appeal, the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void."

6

(*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655.) In other words, "[w]hen an appellate court's reversal is accompanied by directions requiring specific proceedings on remand, those directions are binding on the trial court and must be followed. [Citations.] Where the directions to the trial court are ambiguous, they are interpreted in accordance with the views, reasoning, and holdings expressed in the opinion as a whole." (*In re Justin S*. (2007) 150 Cal.App.4th 1426, 1434-1435.)

     b. **The Remand**

     The parties dispute the nature of this court's remand. First, mother argues that when this court directed the juvenile court to hold a hearing on the issue of continued supervision, we required the juvenile court to hold a full, evidentiary hearing. Furthermore, she claims that this court also directed the juvenile court to make its determination based on the *facts that existed at the time of the hearing*, which it failed to do since many of the Department's submitted documents were several months old.

     We disagree with mother on both points. First, mother did not request an additional evidentiary hearing on the matter. During the October 2014 hearing, the court specifically asked mother's attorney if she was willing to submit on the documents she had already filed and if she would like to make any additional comments. Mother's counsel never responded to the court's query, and did not make any objection when the court asserted it would rule on the matter by the end of the day based on the documents submitted by the parties.[3]

     " '[I]ssues not properly raised at trial will not be considered on appeal.' " (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 15.) "A party forfeits the right to claim

---

[3] Mother claims the juvenile court did not give her an opportunity to respond. However, the record reflects that she did not object when the court informed the parties that it was going to rule on the matter based on the submitted documents. We are not persuaded by mother's interpretation of the reporter's transcript.

7

error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as 'waiver,' applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings." (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 221-222.) Had mother voiced an objection to the way the proceedings were unfolding, the juvenile court could have considered her arguments and decided whether to hold a further hearing on the matter at that time. Her failure to do so forfeits her argument on this point.

Second, there is nothing in section 361.2, subdivision (a) that specifically requires a juvenile court to conduct a full evidentiary hearing on the issue of continued supervision. "With respect to the conduct of [a] hearing, it has long been held that juvenile proceedings need not be 'conducted with all the strict formality of a criminal proceeding.' " (*In re Lesly G*. (2008) 162 Cal.App.4th 904, 914.) Although it did not hold a full evidentiary hearing where the parties put on witnesses, the court allowed the parties to submit documents and invited argument from counsel. Therefore, the juvenile court *did* comply with our directions on remand and *did* conduct a hearing on the necessity of continued supervision.

Next, mother claims that the juvenile court failed to comply with our remand, because it did not conduct a hearing that considered the facts as they existed at the time of the hearing. She insists that the juvenile court failed to consider the most *recent* facts related to child's care, such as information about the services child was receiving in Florida. Therefore, she maintains that the court's consideration of the Department's letter submitted in late July 2014 was insufficient.

In essence, mother seems to believe that the court failed to comply with our remand because it did not consider *current* facts at the hearing. We find this proposition strained. Mother herself provided updated information to the court, which she submitted by declaration on the date of the hearing. Her declaration outlined some of her concerns,

8

including the lack of information about the services child may or may not be receiving in Florida. Through her declaration, she also informed the court about how father was purportedly limiting her visits over Skype with child.

Furthermore, the update letter provided by the Department, along with the attached reports, contained facts relevant to the issue of whether continued supervision was necessary. Although these items were several months old, they detailed the care child had received throughout the past year while he lived with father and provided the court with vital information about father's ability to provide for child and obtain services to address child's special needs.

Based on the foregoing, we conclude the trial court complied with our directions on remand.

2. *The Juvenile Court's Order Terminating Jurisdiction*

Mother alternatively claims the court's finding that continued supervision is unnecessary is unsupported by substantial evidence.

a. **Applicable Law**

Section 361.2, subdivision (a) requires the juvenile court to place a dependent child with a previously noncustodial parent who requests custody, unless placement with the noncustodial parent would be detrimental to the child's safety, protection, or physical or emotional well-being.

If the child is placed with the noncustodial parent, section 361.2, subdivision (b) gives the juvenile court three options. It may (1) order that the previously noncustodial parent become the legal and physical custodian of the child and terminate its jurisdiction over the child; (2) order that the previously noncustodial parent assume custody subject to the jurisdiction of the juvenile court and require that a home visit be conducted within three months; or (3) order that the previously noncustodial parent assume custody subject to the supervision of the juvenile court. (*In re Abram L.* (2013) 219 Cal.App.4th 452,

9

461; § 361.2, subd. (b).)  The decision whether to terminate jurisdiction or continue supervision is committed to the juvenile court's "very broad" discretion.  (*In re Sarah M*. (1991) 233 Cal.App.3d 1486, 1496.)  However, "before terminating its jurisdiction, the juvenile court must make a factual finding that supervision is no longer necessary."  (*In re Austin P*. (2004) 118 Cal.App.4th 1124, 1134; *In re Sarah M*., *supra*, at p. 1496, disapproved on other grounds by *In re Chantal S*. (1996) 13 Cal.4th 196, 204.)

b.  **Standard of Review**

We review the decision to terminate dependency jurisdiction for an abuse of discretion.  (*In re J.S*. (2011) 196 Cal.App.4th 1069, 1082; *In re A.J*. (2013) 214 Cal.App.4th 525, 535, fn. 7.)  When a decision is "committed to the sound discretion of the juvenile court, [its] ruling should not be disturbed on appeal unless an abuse of discretion is clearly established."  (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318.)  To warrant reversal, the challenged determination must exceed the bounds of reason.  (*Id*. at pp. 318-319.)

We review the court's factual findings--including its underlying finding as to the need for continuing supervision--for substantial evidence.  (*In re A.J*., *supra*, 214 Cal.App.4th at p. 535, fn. 7; *In re Austin P*., *supra*, 118 Cal.App.4th at p. 1134 [appellate court reviewed record for substantial evidence indicating whether there was a need for continuing supervision].)  "Under the substantial evidence rule, we have no power to pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or determine where the weight of the evidence lies."  (*In re Diamond H*. (2000) 82 Cal.App.4th 1127, 1135, disapproved on another point in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6; see also, e.g., *In re Nada R*. (2001) 89 Cal.App.4th 1166, 1177.)  "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order."  (*In re Diamond H*., *supra*, at p. 1135.)

"The burden of proof on the issue of termination rests with the party seeking to terminate jurisdiction and the decision whether to terminate jurisdiction falls within the sound discretion of the juvenile court." (*In re Robert L.* (1998) 68 Cal.App.4th 789, 794.)

    c. **Termination of Jurisdiction**

Mother argues the court erred in terminating jurisdiction, because there was no substantial evidence that showed continued supervision was unnecessary. Specifically, mother claims there was a dearth of evidence in the record concerning child's welfare, such as the services, care, and education he was receiving in Florida.

Mother notes there are gaps in the record. For example, there is nothing indicating whether child is receiving treatment for his hearing loss, nor is there any record of a reevaluation following any treatment. There is also nothing indicating that child is continuing to receive occupational therapy in Florida. The social worker had confirmed with child's school in Florida that his individualized education program had been addressed, but the only education program included in the record is the one prepared by the school in Kansas. There is no other documentation detailing the education program implemented by child's school in Florida.

Additionally, mother raises valid concerns about the lack of information regarding father's husband, a concern this court shared in her prior appeal. The reports submitted by the Department and the Department's letter make no mention of father's husband. Accordingly, there is no information about whether he is still in child's life, or if father is now taking care of child alone.

Therefore, we agree that there is evidence that supports mother's argument that continued supervision was necessary. However, there is sufficient evidence supporting the juvenile court's contrary conclusion that continued supervision was not necessary.

11

Although there was nothing in the record that detailed the exact type of services father was receiving in Florida, the attached reports and documents submitted by the Department indicated that father had been taking good care of child since child had begun living with him. In Kansas, father brought child for evaluations at the occupational and speech therapist and was described by these therapists as loving and supportive. For example, the social worker talked with the speech therapist in Kansas who had observed the relationship between father and child, describing it as "wonderful."

The social worker also spoke with father himself. Father said that he and child were doing well, and they were waiting to receive services in Florida, because they had recently moved. Father also informed the social worker that he was arranging medical and dental appointments for child. The social worker was also able to confirm with the Florida school that child would be attending an autism class. Based on all of this information, the social worker opined that father had demonstrated his ability to meet child's needs without court supervision and remained committed to providing child with the care he requires.

"Under the substantial evidence standard of review, the appellate court does not reweigh the evidence, evaluate the credibility of witnesses, or draw inferences contrary to the findings of the trial court." (*In re J.F.* (2014) 228 Cal.App.4th 202, 209.) There is support for mother's position, but our inquiry ends since we find substantial evidence supporting the juvenile court's determination that supervision is no longer necessary. Accordingly, we find no abuse of discretion.

3. *Reunification Services*

Lastly, mother claims the juvenile court failed to consider the issue of reunification services during the hearing.

Section 361.2, subdivision (b)(3), states that if the court orders that a previously noncustodial parent is to assume custody subject to supervision by the juvenile court, it

12

may order reunification services be provided to one or both parents including the parent from whom the child is being removed. There is no requirement that reunification services be offered to a formerly custodial parent when the court terminates jurisdiction under section 361.2, subdivision (b)(1). (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1455.) However, reunification services can be ordered if the court continues jurisdiction and orders a parent assume custody subject to the court's supervision. (§ 361.2, subd. (b)(3).)

Here, the court did not contemplate whether to offer mother reunification services, because it determined that continued supervision was not necessary and terminated jurisdiction. Since this finding was not an abuse of discretion, reunification services were not required and the court's failure to address this issue was not error.

## DISPOSITION

The juvenile court's order reactivating its prior order terminating jurisdiction is affirmed.

_____
                    Premo, J.

WE CONCUR:

_____
        Rushing, P.J.

_____
        Elia, J.